Michael HILLES, Respondent,

v.

Michael THOMAS and Kim
Thomas, Appellants,

and

Home Equity America, Inc., and
Loan City, Defendants.

No. SD 29152.

Missouri Court of Appeals,
Southern District,
Division One.

March 23, 2009.

Randy J. Reichard, Springfield, for Appellants.

No Brief filed for Respondent.

DANIEL E. SCOTT, Presiding Judge.

Defendants Thomas appeal a $3,040 judgment against them for drywall finishing labor at their new home. We must affirm unless the judgment is unsupported by substantial evidence, against the weight of the evidence, or erroneously declares or applies the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and inferences most favorably to the judgment, disregarding all contrary evidence and inferences. *SE Co–Op Serv. Co. v. Hampton*, 263 S.W.3d 689, 692 (Mo.App.2008).

So viewing the evidence and inferences, Defendants were building an expensive, executive home. Rather than using a general contractor, Mr. Thomas personally subbed out all of the work. He hired Bud Nichols to do more than 30,000 square feet of drywall finishing for $12,000. After Nichols submitted his initial draw request for $3,900, Mr. Thomas expressed frustration with his pace of work, since Defendants were incurring $200–300 daily interest. Nichols sought help from Plaintiff Hilles, who agreed to subcontract a dry-

wall crew to Nichols for $20/hour per man. When Mr. Thomas returned several days later, he was amazed at the progress and credited it to Plaintiff's involvement. Defendants thereupon paid Nichols' $3,900 invoice, none of which Plaintiff received.

Soon thereafter, Nichols told Plaintiff he was quitting due to a dispute with Mr. Thomas. When Plaintiff asked about getting paid, Nichols said to talk to Mr. Thomas. Plaintiff did, and testified that Mr. Thomas told him Nichols would not be back; it would be Plaintiff's crew only; and Plaintiff would be paid for all time on the job, including his yet-unpaid subcontract work for Nichols. Mr. Thomas just wanted to see the work get done. Plaintiff testified that he worked a little more, but Mr. Thomas did not pay and started stalling, so Plaintiff pulled his crew. The quality of Plaintiff's work was not disputed. To the contrary, Mr. Thomas testified at trial that he was pleased with Plaintiff's work.

Plaintiff was never paid. Following unsuccessful talks with Mr. Thomas, Plaintiff sued Defendants for his $3,040 worth of time on the job. The trial court granted such judgment after a bench trial where Plaintiff and Mr. Thomas were the only witnesses, but did not indicate whether the judgment was on Plaintiff's contract or quantum meruit claim.[1]

Since neither party requested findings of fact or conclusions of law, we may affirm on any theory supported by the record. Rule 73.01; *Pomona Mobile Home Park, LLC v. Jett*, 265 S.W.3d 396, 398 (Mo.App.2008). Defendants claim the judgment cannot be upheld on either a contract or quantum meruit basis. We consider Defendants' contract-based arguments first.

### Contract Issues

■ Defendants challenge the sufficiency of evidence of a valid contract between Plaintiff and Defendants. Some of their arguments, however, cite Mr. Thomas's testimony or other self-serving evidence that contravenes our standard of review. *SE Co–Op Serv. Co., supra.* We ignore these and consider the remainder in turn.

Defendants correctly argue that Plaintiff admitted his original contract was with Nichols, *i.e.*, as a subcontractor who would bill Nichols, and Nichols then billing the owner. However, this does not preclude nor disprove a new agreement to pay Plaintiff directly, which Defendants tacitly concede by next challenging the sufficiency of the new agreement's terms. We find those terms adequate in light of *Carvitto v. Ryle*, 495 S.W.2d 109 (Mo.App.1973).

*Carvitto* also involved subcontractors building a new home. They stopped working when the general contractor, who had hired them, started bouncing checks. *Id.* at 111. The homeowner wanted to keep the project moving, and according to the subcontractors,[2] told them, "You boys don't do that. I'll see that you get your money," but later refused to pay. *Id.* The subcontractors were found to have proven the necessary elements of a simple contract, which was not unenforceable as indefinite or vague. *Id.* at 113. The court noted that the subcontractors were working men, unsophisticated and unlearned in legal matters, and that "we must 'take language as it is and people as they are.'"

---

1. Plaintiff has not challenged the trial court's denial of his mechanic's lien claim.

2. *Carvitto*, like this case, involved "a drastic conflict between the parties as to the conversation and understanding" between the sub-contractors and homeowner, which was resolved in the subcontractors' favor at trial, and thus, was subject to deference on appeal. *Id.* at 112–13.

*Id.* (quoting 1 Corbin on Contracts, Sec. 95, p. 396). Those observations are equally applicable in this case, and the contract terms and evidence here are no more indefinite than in *Carvitto*.[3]

 Defendants also dispute Mrs. Thomas's liability, claiming Plaintiff proved no agreement with her and offered no testimony as to agency. This argument ignores Defendants' own uncontradicted proof that they employed no general contractor, but had Mr. Thomas "sub out all the work." Defendants also established that Mr. Thomas "handled getting the people to do the various aspects of the job," and confirmed by other testimonial and documentary evidence [4] Mr. Thomas's said authority. The record and reasonable inferences establish Mr. Thomas's ability to benefit and bind Defendants, including Mrs. Thomas, regarding Plaintiff's services.

### Conclusion

Viewing the record as we must, the judgment is supported on contract grounds, and we find no merit to Defendants' contract-based challenges. Thus, we need not evaluate other theories. The judgment is affirmed.

BARNEY and BATES, JJ., concur.

---

3. We also reject Defendants' separate "indefiniteness" argument as to damages, which hinges on Plaintiff's inability to recall the new agreement's date, and thus, exactly what part of his work preceded or followed that agreement. It is clear, from the trial court's comments at the end of trial, that the court ultimately found that Mr. Thomas had agreed to pay for all of Plaintiff's work, including prior work. Plaintiff's testimony, as previously shown, adequately supports this conclusion.

4. For example, Defendants' cancelled checks, proving payment for drywall work authorized by Mr. Thomas, appear to have been written and signed by Mrs. Thomas ("K.J. Thomas").